IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| BONHOMME INVESTMENT PARTNERS, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:13-CV-04120-NKL |
| v. | ) ) | |
| FEDERAL DEPOSIT INSURANCE CORP., as receiver for Excel Bank, et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court is a Motion to Dismiss filed by Defendant Federal Deposit Insurance Corporation, as receiver for Excel Bank ("FDIC-R"). [Doc. # 8]. For the reasons set forth below, FDIC-R's motion is GRANTED.

**I.     Background**

In February of 2009, Plaintiff Bonhomme Investment Partners, LLC ("Bonhomme") borrowed $3,600,000.00 from Excel Bank. The loan was guaranteed by Plaintiffs Donald Davis and Richard Lehman, Bonhomme's only members. According to Plaintiffs, Defendant Shaun Hayes, while acting as an agent of Excel Bank, made a series of material misrepresentations and omissions during the conversations that preceded the execution of this loan. Specifically, Plaintiffs claim that Hayes: 1) deceptively conditioned this loan, as well as another loan from Truman Bank, on Bonhomme's purchase of stock in Truman Bank's parent company, Truman Bancorp, Inc. (the

1

"Truman Stock"); 2) failed to provide material information regarding Excel Bank's lending standards and falsely stated that Bonhomme's purchase and subsequent pledge of this stock was necessary to meet those standards; 3) failed to disclose that Truman Bank and Truman Bancorp were having financial difficulties and that the Truman Stock was worth less than the cost of purchasing it; and 4) falsely stated that Lehman would need to pledge certain real property he owned to secure the loan, that this was necessary to meet Excel Bank's lending standards, and that, if Lehman agreed to pledge his property, Excel Bank would later substitute the Truman Stock as collateral for the loan and release its lien on Lehman's property.

In June of 2009, Bonhomme borrowed an additional $1,600,000.00 from Excel Bank, which Davis and Lehman again personally guaranteed. In connection with this loan, Plaintiffs allege that Hayes, again acting as an agent of Excel Bank, made another series of material misrepresentations and omissions. Specifically, Plaintiffs claim that Hayes: 1) deceptively conditioned the loan, as well as another loan from Truman Bank, on Bonhomme's purchase and subsequent pledge of Preferred Series A stock in Truman Bancorp ("Truman Preferred Stock"); 2) failed to provide material information regarding the applicable lending standards and falsely stated that Bonhomme's purchase and subsequent pledge of the Truman Preferred Stock was necessary to meet those standards; 3) falsely stated that Lehman would need to pledge his property to secure the loan, that this was necessary to meet Excel Bank's lending standards, and that, if Lehman agreed to pledge his property, Excel Bank would later substitute the Truman Preferred Stock as collateral for the loan and release its lien on Lehman's property; and 4) falsely stated that

2

Bonhomme's purchase of the Truman Preferred Stock was a direct purchase from Truman Bancorp, when in fact the Truman Preferred Stock had been purchased by Excel Bank from Hayes.

Plaintiffs further allege that, if not for Hayes' misrepresentations and omissions: 1) Bonhomme would not have executed either loan, or purchased the Truman Stock or the Truman Preferred Stock; 2) Davis and Lehman would not have personally guaranteed the loans; and 3) Lehman would not have pledged his property to secure the loan. Based on these general allegations, Plaintiffs initiated this action, asserting claims for: 1) federal securities fraud; 2) Missouri securities fraud; 3) breach of the implied covenant of good faith and fair dealing; 4) common law fraud; 5) negligent misrepresentation; and 6) unjust enrichment.

Before this suit was filed, Excel Bank initiated an action against Bonhomme, Davis, and Lehman in Missouri state court, seeking to collect the amounts due under the two loans. Subsequently, Excel Bank went into FDIC receivership and FDIC-R transferred both of the Bonhomme loans to Simmons First National Bank ("Simmons"), pursuant to a Purchase and Assumption Agreement. Simmons has since been substituted as the plaintiff in the Missouri state court case.

## II. Discussion

FDIC-R moves to dismiss Plaintiffs' claims against it on the ground that all of these claims are barred by the Financial Institutions Reform and Recovery Act ("FIRREA"), 12 U.S.C. §§ 1821(d)(9)(A), 1823(e). This argument may properly be

raised in a motion to dismiss. *See N. Ark. Med. Ctr. v. Barrett*, 962 F.2d 780, 784 (8th Cir. 1992).

Section 1823(e) provides, in pertinent part:

"No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC], unless such agreement--

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

Section 1821(d)(9)(A) further provides that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation." In short, these statutes provide that any unwritten agreement that tends to diminish the FDIC's interest in any asset is unenforceable against the FDIC.

Plaintiffs argue that section 1823(e) does not apply to their claims because their claims are not based on an "agreement," but rather a claim for misrepresentation. In *Langley v. F.D.I.C.*, 484 U.S. 86, 90-93 (1987), however, the Supreme Court held that the word "agreement," as used in FIRREA, encompasses implied warranties regarding the truthfulness of material facts. Specifically, the Court ruled that unwritten conditions on a

4

promissory note are agreements and therefore unenforceable against the FDIC, "whether the condition consists of performance of a counterpromise . . . *or of the truthfulness of a warranted fact*." *Id.* at 93 (emphasis added). Consequently, the Court concluded that section 1823(e) bars a debtor from claiming fraud in the inducement based on a failed bank's unwritten misrepresentations regarding a loan. *Id.* 93. As a result, in the present case, any implied warranty made by Hayes constitutes "an agreement" under section 1823(e). *See F.D.I.C. v. Va. Crossings P'ship*, 909 F.2d 306, 310 (8th Cir. 1990). And Plaintiffs do not contend otherwise.

Instead, Plaintiffs restrict their argument to Hayes' alleged omissions, claiming that an omission is not an "agreement" within the meaning of section 1823(e). Every appellate court to squarely address this issue, however, has determined that, under *Langley*, omissions as well as misrepresentations constitute agreements for the purpose of section 1823(e), in that claims based on omissions are premised on an implied warranty of good faith and fair dealing. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 58 (2d Cir. 1994); *McCullough v. F.D.I.C.*, 987 F.2d 870, 874 (1st Cir. 1993); *Resolution Trust Corp. v. Pardo*, 980 F.2d 1445 (5th Cir. 1992); *F.D.I.C. v. State Bank of Virden*, 893 F.2d 139, 144 (7th Cir. 1990); *F.D.I.C. v. Bell*, 892 F.2d 64, 66 (10th Cir. 1989). Plaintiffs contest these decisions, relying primarily on *Grant County Savings & Loan Ass'n v. Resolution Trust Corp.*, 770 F. Supp. 1374, 1381 (E.D. Ark. 1991), *rev'd*, 968 F.2d 722 (8th Cir. 1992), which held that an omission is not an agreement for the purpose of section 1823(e). As the First Circuit recognized in *McCullough*, however, "[w]hile the reversal [of *Grant County*] was premised on other grounds, the Eighth Circuit, in *dicta*, expressed

5

its doubt as to the district court's conclusion that § 1823(e) did not apply to an unlawful omission." *McCullough*, 987 F.2d at 872 n.3.

Accordingly, the Court declines to adopt the district court's ruling in *Grant County* that an omission is not "an agreement" under section 1823(e). That ruling is contrary to the "overwhelming prevailing consensus" among courts which have addressed the issue and the Court believes that the Eighth Circuit Court of Appeals would adopt this majority position as well. *McCullough*, 987 F.2d at 873; *see also In re NBW Commercial Paper Litig.*, 826 F. Supp. 1448, 1462-63 (D.D.C. 1992)( "[P]ermitting suit on omissions would practically swallow the *Langley* rule since parties can generally turn a misrepresentation into an omission by means of artful pleading."). Consequently, any claim by Plaintiffs based on Hayes' omissions is covered by the term "agreement" in section 1823(e).

Alternatively, Plaintiffs contend they have only alleged a claim for securities fraud and suggest that any money judgment for the Plaintiffs will come from the general assets of the bank, as opposed to a specific asset.[1] Based on the plain language of section 1823(e) and the consensus among the courts that have addressed this issue, it appears that section 1823(e) only bars those claims that are based on agreements that tend to diminish FDIC-R's interest in a specific asset of the failing bank. *See Kessler v. Nat'l Enters., Inc.*, 165 F.3d 596, 599-600 (8th Cir. 1999); *accord Brookside Assocs. v. Rifkin*, 49 F.3d

---

[1] Based on this argument, the Court assumes Plaintiffs are not seeking to set aside any agreement to guarantee the promissory notes executed by Bonhomme nor the promissory notes themselves. Rather they are seeking a money judgment based on the losses they sustained as a result of Hayes' misrepresentations and omissions. If they were seeking t o set aside the promissory notes and guarantees, those claims would be clearly barred by Section 1823(e).

6

490, 495 (9th Cir. 1995) (collecting cases from the 1st, 6th, 7th, and D.C. Circuits); *Grubb v. F.D.I.C.*, 868 F.2d 1151, 1158 (10th Cir. 1989); *Bonhomme Inv. Partners, LLC v. Hayes*, No. 4:13CV475 CDP, 2013 WL 4760948, *3 (E.D. Mo. Sept. 4, 2013). However, there remains the question of how to determine when the value of a specific asset has been diminished within the meaning of Section 1823(e), even when the claim technically seeks only a judgment against the general assets of the bank.

Courts have generally declined to apply section 1823(e) to free standing tort claims that are unrelated to a particular debt or monetary obligation owed to a bank. *See OPS Shopping Ctr., Inc. v. F.D.I.C.*, 992 F.2d 306, 310 (11th Cir. 1993); *see also Murphy v. F.D.I.C.*, 61 F.3d 34, 36 (D.C. Cir. 1995). With respect to such free standing tort claims, the Eighth Circuit has reasoned that "it is not realistic to apply the bar of § 1823(e) to non-banking transactions or other types of agreements which would not customarily be scrutinized, approved, and recorded by the bank's executive committee or board." *Kessler*, 165 F.3d at 599 (quotation omitted). For this reason, courts considering the application of section 1823(e) often focus on whether the case concerns a "regular" banking transaction, such as the issuance of a loan, as opposed to a "non-banking" transaction, for example the sale of a trust company, *see, e.g.*, *Thigpen v. Sparks*, 983 F.2d 644, 647 (5th Cir. 1993), or personal injuries to a motorist from a collision with an armored car, *see, e.g., Astrup v. Midwest Fed. Sav. Bank*, 886 F.2d 1057, 1059 (8th Cir. 1989).

But the Eighth Circuit has also made clear that "[t]ort actions can be based upon agreements, and such tort-based actions could be barred by the statute." *Hanson v.*

7

*F.D.I.C.*, 13 F.3d 1247, 1252 (8th Cir. 1994). In other words, section 1823(e) bars tort claims that are not "wholly independent of [] agreement[s]" that tend to diminish the FDIC's interest in an asset acquired from a failed bank. *Id.* This is equally evident from the plain language of the relevant statutes, which together provide <u>that no unwritten agreement of this sort shall "form the basis of, or substantially comprise</u>, a claim against the receiver or the [FDIC]." § 1821(d)(2)(A)(emphasis added). The purpose of these statutes is also instructive. The bar on claims arising from undocumented agreements is premised on the recognition that "when the FDIC is deciding whether to liquidate a failed bank, . . . or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank," this decision "must be made with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Langley*, 484 U.S. at 91. Consequently, courts have generally "refused to distinguish on the grounds of technical differences in pleading when the allegations actually center around an oral agreement and an arrangement which would tend to mislead bank examiners." *In re NBW Commercial Paper Litig.*, 826 F. Supp. at 1455.

Thus, in determining whether a party can maintain an action for securities fraud against the FDIC as receiver for a failed bank, courts have focused on whether or not the alleged misrepresentations and omissions were related to a regular banking transaction, like the issuance of a loan. Where the allegations giving rise to the securities fraud claim are wholly unrelated to a regular banking transaction, section 1823(e) does not apply. *See, e.g.*, *Vernon v. F.D.I.C.*, 981 F.2d 1230, 1233 (11th Cir. 1993). Where the

8

Case 2:13-cv-04120-NKL   Document 31   Filed 10/29/13   Page 8 of 12

*F.D.I.C.*, 13 F.3d 1247, 1252 (8th Cir. 1994). In other words, section 1823(e) bars tort claims that are not "wholly independent of [] agreement[s]" that tend to diminish the FDIC's interest in an asset acquired from a failed bank. *Id.* This is equally evident from the plain language of the relevant statutes, which together provide <u>that no unwritten agreement of this sort shall "form the basis of, or substantially comprise</u>, a claim against the receiver or the [FDIC]." § 1821(d)(2)(A)(emphasis added). The purpose of these statutes is also instructive. The bar on claims arising from undocumented agreements is premised on the recognition that "when the FDIC is deciding whether to liquidate a failed bank, . . . or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank," this decision "must be made with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Langley*, 484 U.S. at 91. Consequently, courts have generally "refused to distinguish on the grounds of technical differences in pleading when the allegations actually center around an oral agreement and an arrangement which would tend to mislead bank examiners." *In re NBW Commercial Paper Litig.*, 826 F. Supp. at 1455.

Thus, in determining whether a party can maintain an action for securities fraud against the FDIC as receiver for a failed bank, courts have focused on whether or not the alleged misrepresentations and omissions were related to a regular banking transaction, like the issuance of a loan. Where the allegations giving rise to the securities fraud claim are wholly unrelated to a regular banking transaction, section 1823(e) does not apply. *See, e.g.*, *Vernon v. F.D.I.C.*, 981 F.2d 1230, 1233 (11th Cir. 1993). Where the

allegations are inextricably tied to a regular banking transaction, however, section 1823(e) has been found to bar the claim. *See Bufman Org. v. F.D.I.C.*, 82 F.3d 1020, 1026 (11th Cir. 1996) (holding that the plaintiff's securities fraud claim was barred by section 1823(e) because it was "related to a regular banking transaction"); *see also Lindley v. F.D.I.C.*, No. 12-12015, 2013 WL 4269389, at *4 (11th Cir. Aug. 16, 2013) ("A narrow exception to § 1823(e) and *D'Oench* exists when the plaintiff asserts free standing tort claims. . . . [A] tort claim is not free standing if it is sufficiently intertwined with regular banking transactions, such that exclusion of the alleged secret agreement accords with the underlying policies of *D'Oench*." (quotations omitted)); *Inn at Saratoga Assocs. v. F.D.I.C.*, 856 F. Supp. 111, 118 (N.D.N.Y. 1994), *aff'd*, 60 F.3d 78 (2d Cir. 1995) ("Plaintiffs' tort claims, because they are all based on the underlying loan transactions, are barred by § 1823(e).").

In this case, Plaintiffs' contention that section 1823(e) does not apply to their securities fraud claims focuses on the specific remedy requested, but fails to address the fact that their securities fraud claims are based on, or at least substantially comprised of, unwritten agreements that tend to diminish FDIC-R's interest in their promissory notes. This is so even though Plaintiffs seek only damages for a securities fraud claim. Given the language of their Complaint, it is clear that Plaintiffs' damage calculation for its securities fraud claims will take into account their loan and guarantee obligations. The factual allegations that underlie each of Plaintiffs' claims are that: 1) they agreed to purchase the Truman Stock and Truman Preferred Stock as a condition on the receipt of the two loans; 2) they agreed to this condition based on Hayes' representation that this

9

was necessary to meet the applicable lending standards; 3) in agreeing to this condition, Plaintiffs relied on Hayes' omissions regarding the true value of the stock as well as the financial troubles of Truman Bancorp and Truman Bank; 4) Lehman agreed to pledge his personal property based on the understanding that this property would later be replaced by the stock as security for the two loans; and 5) Plaintiffs agreed to purchase the Truman Preferred Stock directly from Bancorp, when in fact the stock had been sold to Excel Bank by Hayes. [Doc. # 1 at 3-4, 6].

As a result, Plaintiffs' claims for securities fraud are fundamentally premised on agreements that tend to diminish the value of their promissory notes, as evidenced by Plaintiffs' claim that they would not have executed the notes but for the alleged misrepresentations and omissions. [Doc. # 1 at 5, 7]. In fact, Plaintiffs are relying on these same misrepresentations and omissions as affirmative defenses in Simmons' action to collect on the two notes. *See, e.g.*, [Doc. # 22-5 at 7-8].[2] None of these conditions were recorded in writing and thus, under section 1823(e), they are unenforceable against FDIC-R.

This holds true regardless of how Plaintiffs style their claims or the particular remedy they request. Under the plain language of sections 1823(e) and 1821(d)(9)(A), the applicability of these statutes does not depend upon the particular claim asserted against the FDIC or the remedy sought, but rather the basis for the claim. *See McCullough*, 987 F.2d at 873 (ruling that, if section 1823(e) prevents a party from

---

[2] The Court may take judicial notice of state court pleadings. *See Matter of Phillips*, 593 F.2d 356, 358 (8th Cir. 1979).

enforcing an agreement against the FDIC, it bars a "party's attempt to avoid a contractual obligation *and/or to seek damages through a claim of misrepresentation*" (emphasis added)).

Finally, there is no merit to Plaintiffs' contention that their claims do not tend to diminish any asset acquired by FDIC-R because FDIC-R assigned their loans to Simmons. Plaintiffs have not cited any authority that supports the proposition that the FDIC loses the protection of section 1823(e) when it transfers assets to another banking institution. Furthermore, such a rule would contravene the purposes of section 1823(e), which include facilitating "the purchase and assumption of failed banks as opposed to their liquidation." *F.D.I.C. v. Newhart*, 892 F.2d 47, 49 (8th Cir. 1989). As the Eighth Circuit explained in *Newhart*:

> An essential element of a purchase and assumption transaction is the speedy evaluation by the purchasing bank of the failed bank's assets. . . . *In order to quickly evaluate its potential liability under a purchase and assumption versus a liquidation*, the FDIC must be able to rely on the records of the failed bank to estimate which assets will be returned to the receiver and which assets will be ultimately collectible.

*Id.* at 49-50 (emphasis added). It would clearly contravene the goal of facilitating purchase and assumption transactions to hold that the FDIC sacrifices the protections afforded by section 1823(e), on which the FDIC relies in assessing the value of this type of transaction, as soon as it engages in such a transaction. Accordingly, the Court declines to find that section 1823(e) no longer applies simply because FDIC-R transferred Plaintiffs' loans pursuant to a purchase and assumption agreement.

**III.    Conclusion**

11

For the foregoing reasons, Defendant Federal Deposit Insurance Corp., as receiver for Excel Bank's Motion to Dismiss, [Doc. # 8], is GRANTED, and Plaintiffs' claims against FDIC-R are DISMISSED, with prejudice.

                                                                     s/ Nanette K. Laughrey
                                                                      NANETTE K. LAUGHREY
                                                                      United States District Judge

Dated: October 29, 2013
Jefferson City, Missouri